SOUTHWICK, P. J.,
for the court.
¶ 1. Shamet Patterson was found guilty of aggravated assault by a Pike County Circuit Court jury. Her appeal is based solely on alleged error in the granting of what is commonly denominated an “arming instruction.” The instruction conforms to Supreme Court pronouncements regarding the issue. We therefore find no error and affirm.
*763 FACTS
¶ 2. Mary Cole and Shamet Patterson shared an apartment in McComb, Mississippi. Cole had been residing there for a few months since her mother’s death. On May 31, 2000, Cole was downstairs sleeping on the couch when she was awakened by loud noises coming from the upstairs portion of the apartment. Cole testified that she went upstairs to investigate. Cole identified that the disturbance was coming from inside her bedroom. Cole was upset to see that Patterson and several others were playing on a piece of furniture that had sentimental value to Cole. Cole and Patterson went downstairs to talk. A brief argument ensued, which ended in Cole’s telling Patterson that she was going to gather her personal belongings and leave.
¶ 3. Cole went back upstairs to her bedroom. Patterson and one other person, Gaunshay Spurlock, were also present. Shortly after Cole re-entered the bedroom, a fight between Patterson and Cole began. The struggle went from the bedroom to the bottom floor of the apartment. There was testimony that once downstairs, Patterson went into the kitchen, armed herself with a knife, and attempted to stab Cole. One witness testified that the attempt failed because “the knife bent.” The two combatants were separated. Again Cole attempted to get her belongings, while Patterson was escorted outside by Spurlock in an effort to calm her. Patterson stayed outside for a short period of time, but testified she re-entered the apartment to protect her property.
¶ 4. Shortly after Patterson re-entered the apartment, Cole was stabbed. Patterson testified that Cole initiated the second segment of the fight, even though Patterson was holding the knife in her hand. It is undisputed that during the entire altercation Cole was unarmed. There was no one who actually saw the stabbing. Cole passed out. The initial treating physician stated that the injuries had been potentially life threatening. Patterson testified that she had to use the knife because she was being overpowered by Cole, who was larger in size and was throwing various heavy objects at her. Cole’s account is that she was bending over to pick up an article of clothing when she was stabbed from behind. A physician testified that he treated Cole for three stab wounds, one each on the back, arm and hand; the lacerations on Cole’s back and arm were serious enough to require stitches.
¶ 5. Patterson was convicted on the charge of aggravated assault. She appeals. .
DISCUSSION
¶ 6. Patterson’s sole assertion is that the following jury instruction was fatally erroneous.
[Instruction S — 6] The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt, that on or about the 31st day of May, 2000, in Pike County Mississippi, the defendant Shamet Patterson, armed herself with a means likely to produce death or serious bodily injury to-wit; a knife intending to use the same for the purpose of overcoming the adversary if necessary, and being this armed, provoked a difficulty with the victim, in which difficulty she used said means attempting to injure the victim, then in that event, the defendant Sham-et Patterson, cannot be heard to say she acted in self-defense, unless you further believe from the evidence that the defendant, Shamet Patterson, acting in good faith, attempted to abandon the difficulty finally.
¶ 7. This type of instruction is commonly referred to as an “arming in *764 struction.” Its primary purpose is to negate a defendant’s claim of self-defense if the accused became armed with the intent to cause serious injury to the victim. The concept is that a defendant may not assert self-defense if she had the prior intention to cause death or serious injury. Only in extremely rare cases will this instruction be supported by the evidence. Hart v. State, 637 So.2d 1329, 1337-8 (Miss.1994).
¶ 8. The Hart opinion stated that the Court did “not retreat from what we have repeatedly stated, that only in cases where the proof substantiates the accused was not in any danger when he armed himself, and from which the proof wfll show that he armed himself for the very purpose of shooting the victim, that such an instruction may be properly considered by the court.” Hart, 637 So.2d at 1337, quoting Barnett v. State, 563 So.2d 1377, 1381 (Miss.1990).
¶ 9. We find the prerequisites for an arming instruction under Hart to be these: 1) the defendant became armed while in a position of safety; 2) the defendant had the intent of causing serious bodily injury; 3) the defendant inflicts injury after provoking a difficulty with the victim; and 4) there is no evidence that after the defendant became armed, she legally abandoned her original intent or made a good faith effort to withdraw from the endeavor.
¶ 10. Even though Hart appears to require that the person arm herself with the intent to cause serious injury to the victim, other case law has not made that precise intent necessary.
On the other hand, if a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor and deprives himself of the right of self-defense. Parker v. State, 401 So.2d 1282, 1286 (Miss.1981).
Anderson v. State, 571 So.2d 961, 963 (Miss.1990). This Court later applied that reasoning to a similar instruction. Rice v. State, 782 So.2d 171, 174 (Miss.Ct.App.2001).
¶ 11. The distinction between the two formulations is this. Anderson seemingly states that the self-defense is nullified if the defendant became armed for the purpose of overcoming the adversary if necessary, which means that the intent to cause serious injury is only if the adversary creates that need. Hart, by quoting Barnett, indicates that the arming must be done by a defendant who has the purpose, i.e., the desire to use the weapon to cause serious injury, and not only if it is necessary because of some future possible act by the adversary.
¶ 12. We cannot find error when the instruction given in the present case so closely follows the precise statement of the law that appears in Anderson, which has not directly been questioned by the Supreme Court. Thus we now turn to whether the facts support the instruction.
¶ 13. The testimony revealed that the initial fight ended when the two women were separated. Patterson went outside. When she re-entered Cole’s room, Patterson was holding the knife in her hand. Exactly what happened is murky in Patterson’s testimony, but she states that Cole reinitiated the fight. On the other hand, Cole testified that she began packing her possessions after Patterson first left the room. While bending over to pick up a shoe, she “felt like [Patterson] punched me in the back.” Only then did she see that Patterson had returned to the room; Cole soon realized that the “punch” was actually Patterson’s stabbing her with a knife. Though the fight recommenced, Cole immediately began to feel dizzy. Jurors *765 could infer from Cole’s testimony that Patterson armed herself for the purpose of causing serious injury if necessary, and indeed used the knife before Cole had done anything or even knew that Patterson had returned to the room.
¶ 14. Self-defense was raised by Patterson this way. She testified that the larger Cole was beating her, that Cole was on top of her at some stage, that Cole threatened her and threw items such as a fan at her. “I was hurt,” Patterson said. “I was really hurt, I couldn’t hardly walk for two weeks.” Patterson testified that when Cole was stabbed, Patterson was on the floor and Cole had continued to throw objects at her. Using the knife was only for self-protection.
¶ 15. The trial judge found sufficient evidence to justify the giving of a self-defense instruction. In a criminal case the State always has the burden of proving every element. Heidel v. State, 587 So.2d 835, 843 (Miss.1991). To convict, a jury must have believed beyond a reasonable doubt that Patterson was not acting in self-defense. This arming instruction validly nullified the self-defense claim if jurors found the facts were as Cole related them. Apparently jurors did. We find no error.
¶ 16. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED ON POST-RELEASE SUPERVISION AND PAY $10,776.55 IN RESTITUTION IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.